MARTHA J. ADAMS *et al.*

*v.*

ELIZABETH BLACK.

*Opinion filed December 21, 1899.*

1. CLOUD ON TITLE—*what essential to right to maintain bill to remove cloud.* A bill to remove a cloud from complainant's title, and for no other relief, can be maintained only where the complainant is in actual possession or the land is vacant and unoccupied.

2. EVIDENCE—*what will not show possession.* Possession of land sufficient to entitle one to maintain a bill to remove cloud is not shown by evidence that the complainant's husband visited the land at one time after she had paid seven years' taxes thereon as vacant property, and that her son held disputed possession with another party, claiming under a quit-claim deed, for some four months, but came away leaving such other in possession.

APPEAL from the Circuit Court of Lawrence county; the Hon. E. E. NEWLIN, Judge, presiding.

CHARLES J. BORDEN, S. B. ROWLAND, and J. E. MC-
GAUGHEY, for appellants.

GEE & BARNES, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This cause originated in the circuit court of Lawrence
county by bill in equity to quiet title, wherein Elizabeth
Black was complainant and one Francis M. Adams de-
fendant. The bill was filed May 10, 1895. On October 19
following, Adams, having answered, filed his cross-bill
against Mrs. Black, also praying a decree quieting his
title to the same lands. Answers and replication were
filed both to the original and cross-bills. Mrs. Black
claimed title under a tax deed and seven years' payment
of taxes thereunder, the land being vacant and unoccu-
pied, while Adams claimed under the paramount title
and possession. Subsequently, in July, 1898, Francis M.
Adams died, leaving Martha J., his widow, and two chil-
dren. Thereupon the original bill was amended, mak-
ing them parties defendant. The widow answered the
amended bill, denying the validity of complainant's title
and denying her possession of the premises. One of the
children, a minor, answered by guardian *ad litem;* the
other failed to answer. The abstract, which is very
meagre as to the pleadings, shows that Mrs. Black an-
swered the cross-bill of Mrs. Adams and the children,
denying all material allegations therein; but what that
cross-bill was does not appear, unless it be presumed that
they had adopted the one filed by the deceased hus-
band. Replications being filed, the cause was submitted
on proofs partly heard in open court and partly reported
by a special master to take the testimony of certain wit-
nesses. The court found in favor of the complainant in
the original bill and decreed the title of the lands to be
in her, holding the deed under which the complainants
in the cross-bill claimed, to be a cloud upon her title and

declaring the same invalid. From that decree this appeal is prosecuted.

Independently of the statute, the holder of the legal title not in actual possession cannot maintain a bill to quiet title and compel a relinquishment of adverse claims, for the reason that he has a complete and adequate remedy at law. Under our statute of 1869 such a bill can be maintained by a party out of possession where the premises are vacant and unoccupied. But under this statute it has been repeatedly held by this court that a bill in equity to remove a cloud upon the complainant's title, seeking no other relief, can be maintained only where the complainant is in the actual possession of the land or the same is shown to be unimproved and unoccupied. We said in *Glos* v. *Randolph*, 133 Ill. 197: "There are but two cases, under our statute, in which a bill to remove cloud from title can be maintained, viz., where the complainant is in possession of the premises, or where they are unoccupied,"—citing cases.

We have unsuccessfully searched this record for testimony proving or tending to prove that the complainant in the original bill was in possession of the lands therein described at the time she filed her bill. On the contrary, it clearly shows that at that time Francis M. Adams was in such possession. The widow, Martha J. Adams, testified: "Since 1894 Mr. Adams was in possession of the land until he died." And this direct testimony seems to be wholly uncontradicted. There is a conflict in the evidence as to whether Mrs. Black was at any time in the actual possession; but it is impossible to gather from this evidence that any possession she may have had was continued up to the time of the filing of her bill. W. F. Black testified: "I am the husband of complainant. I was on the land in 1889. I knew I had a deed seven years, and wanted to go on the land. Mr. Dickerson paid the taxes for Mrs. Black. I had been told that I must go upon the land and take possession. I did not go over

all the lands, but around and through them. I broke off some small sticks and scratched around with my heel to indicate about the size of the house I would want to build. I went there for the purpose of taking possession, as I had been told I must do, as Mrs. Black had paid the taxes out of her own money. I have been on the land five or six times." It can scarcely be claimed that the acts described by this witness amounted to taking actual possession of the land, in the absence of all proof that they were followed up by other acts. Nothing more is claimed to have been done by the complainant herself, or through others, until 1894. The mere fact that her husband saw the land, or visited it, does not prove continuous possession.

It appears that a board of commissioners, of which Francis M. Adams was a member, obtained a right of way for a ditch over the land (the date of which does not definitely appear) from Mrs. Black, and that seems to be regarded as tending to prove ownership or possession in her. It proves neither, between these parties, there being no question of estoppel in the case; and most certainly it gives no aid to the complainant's claim of possession. From the time the husband marked out the ground for a house, in 1889, no acts of possession by the complainant are shown, until,—as stated above,—the summer of 1894, when her son, Fred W. Black, came from Chicago and went upon the land. It is conceded that in the early part of June of that year Francis M. Adams obtained a quit-claim deed to the land, and the evidence clearly shows that soon thereafter he built a small house on the east side of the premises, put a tenant in it and caused several acres of timber to be deadened. After this house was built young Black came, as he testifies, for the purpose of taking possession for his mother. He admits he found the house on the land, but states that it was vacant and unoccupied, and that he took possession of it, putting some tools in it. He also says soon thereafter a

controversy arose between himself and Adams as to the ownership of the land, and that the latter claimed it and insisted upon his right to possession, which was denied by Black, the latter forbidding him to do anything more upon the premises. He further testifies that while he was there Adams built another house, on the west side of the land, placed a tenant in it and caused timber to be deadened, and that he (Black) remained there about four months, boarding with William Burrels, and that while there he cleared as much as one acre ready for the plow, and went away near Hallowe'en. In short, his testimony, as well as that on behalf of the defendants, shows that during the time he was there both parties were claiming possession, and that he went away the last of October, leaving Adams with a tenant upon it.

Under this state of facts it is clear, under the authorities cited, the remedy of Mrs. Black April 10, 1895, was not by bill in equity to quiet title or remove a cloud from her title, she not then being in possession. The circuit court therefore erred in its finding in her favor, and for that error its decree must be reversed and the cause remanded.

Whether the rights of the parties can be determined upon the cross-bill, on another hearing, we do not now undertake to decide. The abstract of that bill wholly fails to show the grounds, if any, upon which the tax title of Mrs. Black is assailed.

From the manner in which the cause is here presented we are of the opinion that it should be remanded to the circuit court, with leave to either party to amend her pleadings on the cross-bill and introduce additional evidence, if she shall so desire. *Reversed and remanded.*